IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANA L. RAMSEY, AS ADMINISTRATRIX, | : | |
| OF THE ESTATE OF MEGAN LOUISE | : | |
| RAMSEY, DECEASED, AND AS PARENT AND | : | |
| LEGAL GUARDIAN OF MEGAN LOUISE | : | CIVIL ACTION |
| RAMSEY IN HER OWN RIGHT, | : | NO. 16-299 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE DEVEREUX FOUNDATION, | : | |
| (d/b/a DEVEREUX POCONO CENTER), | : | |
| Defendant. | : | |

Jones, II    J.                                                                 July 22, 2016

## MEMORANDUM

Diana Ramsey ("Plaintiff"), as administratrix of the estate of decedent, Megan Ramsey, and as parent and legal guardian of Megan Ramsey, filed a Complaint against The Devereux Foundation ("Defendant") seeking punitive and compensatory damages from Defendant "in a sum in excess of the limits for arbitration, plus interests, costs, and damages for prejudgment delay." (Dkt No. 6. [hereinafter A.C.].) Now pending before the Court is Defendant's Motion to Dismiss Based on Lack of Subject Matter Jurisdiction, Or, In the Alternative, Motion to Transfer Venue (Dkt No. 7 [hereinafter MTD]) and Plaintiff's Response in Opposition of Defendant's Motion (Dkt No. 8 [hereinafter Resp.].)

For the reasons that follow, Defendant's Motion to Dismiss will be DENIED and Defendant's Motion, in the alternative, to Transfer Venue will be GRANTED.

## I.    Factual and Procedural Background

Plaintiff initiated this claim by filing a Complaint against Defendant on January 25, 2016 followed by the Amended Complaint on March 7, 2016. (Dkt No. 6.) In her Amended Complaint, Plaintiff seeks punitive and compensatory damages from Defendant under three separate counts regarding the death of decedent, Megan Ramsey: (1) negligence, (2) wrongful death, and (3) survival. (A.C. ¶¶ 6-8.) Plaintiff brought this action on behalf of her deceased daughter, Megan Ramsey, whose estate Plaintiff administers. Megan Ramsey was born in New

Jersey and lived there until she was 19 years old. This action concerns Megan Ramsey's death from bowel perforation and intra-abdominal infection while under the care of Defendant at its community residential facility called Skyview in Greentown, Pennsylvania. (A.C. ¶ 28.)

Plaintiff brought the instant suit in the Eastern District of Pennsylvania, invoking this Court's jurisdiction under 28 U.S.C. § 1332 pertaining to diversity of citizenship. (A.C. ¶ 15.) Plaintiff asserts diversity jurisdiction based on the allegation that Ms. Ramsey, the decedent, was a citizen of New Jersey whereas the Devereux Foundation is a Pennsylvania corporation with its principal place of business in Pennsylvania. (A.C. ¶¶ 1-4.) Plaintiff alleges that venue is proper due to the location of Defendant's principal place of business in the Eastern District of Pennsylvania as well as the fact that Defendant regularly conducts business in this District. (A.C. ¶ 16.)

Defendant filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 12(b)(1). (MTD ¶ 48.) Defendant argues that this Court lacks subject matter jurisdiction due to a lack of complete diversity between the parties. (MTD ¶ 47.) Specifically, Defendant alleges that Diana Ramsey, as administratrix of Megan Ramsey's estate, is a citizen of Pennsylvania for diversity jurisdiction purposes and that this defeats complete diversity since Defendant is a Pennsylvania citizen as well. (MTD ¶ 46.) If the Court is found to have subject matter jurisdiction under 12(b)(1), Defendant alternatively moves for the Court to transfer venue to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404. (MTD ¶ 80.) Defendant argues that the Middle District is the more appropriate venue because it: is the District in which the events occurred, is more convenient for the parties, is more convenient for the witnesses, serves the interests of justice, serves private interests, and serves public interest factors. (MTD ¶ 60-61.)

In response, Plaintiff argues that decedent was a citizen of New Jersey and not Pennsylvania at the time of her death, thereby creating complete diversity under 28 U.S.C. § 1332. (Resp. ¶ 26.) Plaintiff bases this claim on decedent's incapacity to change her own domicile, the financial commitment made by New Jersey for decedent's care in Pennsylvania, and the intended return of decedent to New Jersey under the "Return Home New Jersey" initiative. (Resp. ¶¶ 28-31.) New Jersey's Department of Human Services provided financial support for Megan Ramsey's care throughout her adult life. (A.C. ¶¶ 9-10.) Return Home New

Jersey is a state-sponsored initiative to bring disabled people like Megan Ramsey back to their home state of New Jersey. (A.C. ¶ 11.)

Plaintiff also argues that the Eastern District of Pennsylvania is a more appropriate venue than the Middle District. (Resp. ¶ 53.) Plaintiff bases this assertion on the general deference granted to a plaintiff's choice of forum as well as the fact that many witnesses reside in the Eastern District of Pennsylvania or in New Jersey, which Plaintiff alleges is closer to the Eastern District than the Middle District. (Resp. ¶ 53.) Plaintiff additionally notes that certain events involved in the action occurred in the Eastern District such as the decedent's autopsy and routine care at Children's Hospital of Philadelphia, and any records located in the Middle District are easily transferrable to the Eastern District. (Resp. ¶¶ 56, 64.)

## II.   Subject Matter Jurisdiction

### a.   Legal Standard

District courts have subject matter jurisdiction over civil actions where there is a federal question or where: (1) the parties are citizens of different states and (2) the matter in controversy exceeds $75,000. 28 U.S.C. § 1332(a). "Complete diversity requires that . . . no plaintiff be a citizen of the same state as any defendant." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (citing *Exxon Mobil Corp. v. Allapattah Svcs. Inc.*, 545 U.S. 546, 553, (2005). The party claiming the existence of subject matter jurisdiction bears the burden of proof. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citations omitted); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) (citations omitted). Pursuant to 28 U.S.C. § 1332(c)(2), "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent."

Challenges to subject matter jurisdiction through Rule 12(b)(1) motions take two forms, facial and factual. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citations omitted). A factual attack, on the other hand, "argues that, while the pleadings themselves facially establish jurisdiction, one or more of the factual allegations is untrue thereby causing the case to fall outside the court's jurisdiction." *Leisk v. Elliot*, No. CIV.A. 14-3639, 2014 WL 6070837, at *1 (E.D. Pa. 2014) (citing *Mortensen*, 549 F.2d at 891). "[I]n reviewing a factual

attack, 'the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence.'" *Lincoln Ben. Life Co.*, 800 F.3d at 105 (quoting *McCann v. Newman Irrevocable Trust,* 458 F.3d 281, 290 (3d Cir. 2006) (citations omitted)). The trial court may, therefore, weigh evidence outside the pleadings in order to "satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. As such, no presumptive truthfulness attaches to allegations made in the Complaint insofar as Defendant launches a factual, rather than a facial, attack. *Id.*

### b. Federal Diversity Jurisdiction Exists Under 28 U.S.C. §1332(a), Therefore, Defendant's Motion to Dismiss Will Be Denied

Defendant alleges that the decedent, Megan Ramsey, was a citizen of the Commonwealth of Pennsylvania and therefore Diane Ramsey, suing on her behalf, is considered a citizen of Pennsylvania for purposes of diversity jurisdiction. Plaintiff concedes that the administratrix of an estate assumes the domicile of the decedent. However, Plaintiff maintains that Megan Ramsey was and continued to be a citizen of New Jersey until her death. Because the Court agrees that Plaintiff was a citizen of New Jersey at the time of her death, complete diversity exists between the parties and the prerequisites for federal subject matter jurisdiction under 28 U.S.C. §1332(a) are satisfied. The Court will accordingly deny the motion to dismiss for lack of subject matter jurisdiction.

For diversity purposes, where the plaintiff is the representative of the estate of a decedent, the plaintiff is deemed to acquire the citizenship of the decedent at the time of the decedent's death. *See* 28 U.S.C. 1332(c)(2) ("the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent . . ."). In addition, "the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent." 28 U.S.C. § 1332(c)(2). Therefore, Plaintiff Diane Ramsey's citizenship as both administratrix and legal representation is determined by Megan Ramsey's citizenship at the time of her death.

Citizenship and domicile are synonymous for purposes of diversity jurisdiction, and domicile does not necessarily require that a person reside in the respective state. *Last v. Elwyn, Inc.*, 935 F.Supp. 594, 596-597 (E.D. Pa. 1996). "Domicile of origin" is the domicile one acquires at birth, and that remains one's domicile until one assumes a different "domicile of choice." *Miss. Band*

*of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). A person changes domicile by moving one's residence to a different state with the intention to make that state one's home. *Freidrich v. Davis*, 767 F.3d 374, 377 (3d Cir. 2014). Incompetent persons, however, are presumed to be incapable of changing domicile by choice, and the burden of overcoming the presumption lies with the party seeking to show a change of domicile by the incompetent person. *Juvelis by Juvelis v. Snider*, 68 F.3d 648, 654 (3d Cir. 1995). The Third Circuit uses the "substantial contacts" test in these cases to determine the domicile of an incompetent person. *Id.* at 656. While it is true that the required legal capacity for one to change domicile is less than that required for management of one's affairs, the substantial contacts test still looks to a "mosaic of circumstances" to establish whether an incompetent person has indeed changed domicile by choice. *Id.* at 655. This mosaic includes subjective and objective factors such as the opinions of the incompetent person's parents as well as "the individual's motive in seeking to establish a new domicile, the duration of his relationship to the locale, abandonment of a prior residence, and the location of assets and friends . . ." *Id.* at 656. The assertion of a new domicile must also be done in good faith. *Id.*

In *Juvelis*, the parents of a profoundly retarded son brought suit against Pennsylvania's Department of Public Welfare for denying benefits on the grounds that their son was not domiciled in Pennsylvania because the parents were living in Venezuela. *Id.* at 651. The court held that even a profoundly retarded person such as the plaintiffs' son could rebut the presumptive incapacity to change domicile through the substantial contacts test that takes into account the aforementioned subjective and objective factors. *Id.* at 654-655. The court affirmed the lower court's holding that the son was domiciled in Pennsylvania, citing reasons such as the lack of intent for the son to leave his care facility there, the location of all his friends and possessions at the facility, and that "within his limited ability to do so, [he] expressed a subjective attachment to [Pennsylvania]." *Id.* at 657.

Megan Ramsey acquired New Jersey domicile when she was born and raised in the State. *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. at 48. Defendant uses *Juvelis* to argue that, although Megan Ramsey was legally incapable of managing her own affairs, she was legally capable of changing her domicile of choice to Pennsylvania. (MTD ¶ 37.) But unlike the incompetent son in *Juvelis*, there is conflicting testimony about Megan Ramsey's subjective attachment to Skyview in Pennsylvania. Plaintiff rebuts Defendant's point that staff at Skyview

heard Megan express a subjective understanding that Skyview was her home with the fact that "Megan also articulated that New Jersey was her home." (Resp. ¶ 42.)

The most important distinction between this case and *Juvelis* was the intention to remain in Pennsylvania only temporarily. *Juvelis by Juvelis v. Snider*, 68 F.3d at 657. While the decedent in *Juvelis* had no intention of leaving Pennsylvania, Megan Ramsey was expected to return to New Jersey. (Resp. ¶ 43.) Megan Ramsey was not expected to stay at Skyview indefinitely but rather was to return to New Jersey in the near future under the "Return Home New Jersey" initiative that sought to bring disabled adults back to New Jersey from out-of-state facilities. (Resp. ¶ 43.) Defendant was aware of the plans to transition Megan back to New Jersey and even participated in meetings with Diana Ramsey to prepare for it. (Resp. ¶ 43.) Moreover, not all of Megan Ramsey's assets or possessions were located at Skyview; she maintained a living space with a number of her assets and possessions in her mother's house in New Jersey. (Resp. ¶ 14.) Megan Ramsey never severed ties with New Jersey since that State made a significant financial commitment to her stay in Pennsylvania, providing further grounds for her continued New Jersey domicile. *Last v. Elwyn*, 935 F.Supp. at 598 ("Chief among the reasons supporting domicile in New York is that state's extensive financial and administrative commitment to Douglas.").

Because of Megan Ramsey's continued ties with the State of New Jersey and lack of intent to make Pennsylvania her permanent home, she remained a citizen of New Jersey from the time she acquired that domicile at birth until the time of her death. *Last v. Elwyn*, 935 F.Supp. at 598; *Juvelis by Juvelis v. Snider*, 68 F.3d at 657. Plaintiff, as representative of Megan Ramsey, is therefore a citizen of New Jersey for purposes of this case. 28 U.S.C. § 1332(c)(2). The parties do not dispute that the Defendant is a citizen of Pennsylvania. As a result, there is complete diversity between the parties and this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a). The motion to dismiss for lack of subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1) will be denied accordingly.

**IV. TRANSFER OF VENUE**

**a. Legal Standard**

Inasmuch as Defendant concedes that venue would be proper in either the Middle District of Pennsylvania or the Eastern District of Pennsylvania, 28 U.S.C. § 1404(a) controls the instant Motion:

§ 1404. Change of venue
(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

"Section 1404(a) transfers are discretionary determinations made for the convenience of the parties and presuppose that the court has jurisdiction and that the case has been brought in the correct forum." *Lafferty v. Gito St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007). In exercising this discretion, the court must remain mindful that "the burden of establishing the need for transfer . . . rests with the movant." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Courts consider a variety of factors in determining the proper forum, and "[w]hile there is no definitive formula or list of the factors to consider . . . courts have considered many variants of the private and public interests protected by the language of § 1404(a)." *Id.* Still, "[w]hether to transfer a case is generally committed to the discretion of the district courts." *In re United States*, 273 F.3d 380, 387 (3d Cir. 1995). Of course, "a plaintiff's choice of proper forum is a paramount consideration in any determination of a transfer request, and that choice . . . 'should not be lightly disturbed.'" *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (quoting *Ungrund v. Cunningham Brothers, Inc.*, 300 F.Supp. 270, 272 (S.D. Ill. 1969)). As such, "'unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail.'" *Id.* (quoting *Owatonna Mfg. Co. v. Melroe Co.*, 301 F.Supp. 1296, 1307 (D. Minn. 1969)). *See also*, *Reassure Am. Life Ins. Co. v. Midwest Res., Ltd.*, 721 F.Supp.2d 346, 352 (E.D. Pa. 2010) ("The defendant bears the burden of proving that venue is proper in the transferee district and that convenience and justice would be served by transferring the action to another district.

The private and public factors to be considered by the court in assessing a request to transfer venue on the basis of convenience, include:

[T]he plaintiff's forum preferences; Defendant's preferences; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial conditions; the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and the location of books and records . . . [e]nforceability of judgment; practical considerations that could make the trial easy, expeditious or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion, the local interest in deciding local controversies at home, the public

> policies of the fora, and the familiarity of trial judges with the state law for
> diversity cases.

*Aamco Transmission Inc. v. Johnson*, 641 F.Supp.2d 464, 466 (E.D. Pa. 2009) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995)). *See also Falu–Rodriguez v. Democracia USA, Inc.*, No. 10–CV–3811, 2011 U.S. Dist. LEXIS 833, at *4–5,2011 WL 31400 (E.D. Pa. 2011) (noting the factors discussed in *Jumara*, and highlighting the need to assess "the convenience of the parties as indicated by their relative physical and financial condition," as well as "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," and "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).").

In order to determine whether transfer of venue to the Middle District is appropriate, the Court will extensively weigh the aforementioned factors.

### b. <u>The Middle District of Pennsylvania is the More Appropriate Venue, Therefore, Defendant's Motion to Transfer Will Be Granted</u>

One of the primary factors in the venue transfer analysis is the deference given to the plaintiff's choice of forum. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). But this factor loses force when that forum is neither the plaintiff's home forum nor where the operative facts of the action occurred. *Sinochem Int'l. Co. v. Malaysia Int'l. Shipping Corp.*, 549 U.S. 422, 430 (2007); *see also Natl. Mortg. Network, Inc. v. Home Equity Ctr., Inc.*, 683 F. Supp. 116, 119 (E.D. Pa. 1988) ("[Plaintiff's choice of forum] is deserving of less weight where none of the operative facts of the action occur in the forum selected by the plaintiff."). Moreover, the courts are generally inclined to adjudicate actions in the district where the events giving rise to the action occurred. *Cottman Transmissions Sys., Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994) ("The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim' . . ."). Therefore, because the Eastern District of Pennsylvania is neither Plaintiff's home district nor the district in which the operative facts of the action occurred, deference is not given to Plaintiff's choice of forum. Instead, because the operative facts occurred in the Middle District, the Middle District is given preference. Because weighing the public and private factors supports the preference for the Middle District, the district in which the operative facts occurred, venue will be transferred to the Middle District.

The private factors weigh in favor of transferring this case to the Middle District of Pennsylvania. First, as discussed above, Plaintiff's forum preference carries less weight given that she neither resides in the Eastern District of Pennsylvania nor did the operative facts giving rise to the action occur there. Second, Defendant prefers the Middle District of Pennsylvania. (MTD ¶ 53.) Third, the actions giving rise to the claim did not occur in the Eastern District of Pennsylvania. The operative facts of this action include the events at Skyview in the days leading up to Megan Ramsey's death in the Middle District and not, as Plaintiff argues, the routine care that Megan received in the Eastern District. Fourth, the convenience of the parties weighs in favor of transferring to the Middle District. Defendant argues that the Middle District is more convenient for its employees involved because those employees live and work near the Skyview facility in the Middle District. In addition, the difference in distance for Plaintiff is not great enough to outweigh the interest in litigating the action where the operative facts occurred because the Middle District Courthouse is only twenty miles farther from Plaintiff's residence than the Eastern District Courthouse. (MTD ¶ 53.) Fifth, the convenience of the witnesses is neutral because it is unlikely any witness will be prohibited from testifying based on the location when the Middle District Courthouse is approximately one hour from the Eastern District Courthouse. This Court's review of the relative distance of Plaintiff's witnesses from each courthouse indicates that the difference in distance is at most about sixty miles. (Resp. ¶ 67.) Defendant, on the other hand, asserts that the Middle District is more convenient for its witnesses as they live near Skyview which is located in the Middle District. (MTD ¶ 53.) Therefore, given the likely ability of all witnesses to testify, even in the Middle District, the relative convenience of the Eastern District for Plaintiff's witnesses does not outweigh the countervailing interest in litigating where the operative facts occurred. Sixth, the records and documents are easily replicable and transportable between the Middle and Eastern Districts, so this factor is neutral. (Resp. ¶ 70.) Although the factors pertaining to Plaintiff's choice of forum and convenience for Plaintiff and her witnesses favor the Eastern District, the remaining private factors weigh in favor of transferring this case to the Middle District of Pennsylvania.

The public factors weigh in favor of transferring this case to the Middle District of Pennsylvania. First, the judgment is equally enforceable whether reached in the Middle or Eastern District of Pennsylvania. Second, practical considerations that could make the trial easy, expeditious, or inexpensive include distance of the necessary witnesses from the court as well as

congestion of the court's docket. Defendant asserts that its witnesses are closer to the Middle District Courthouse, and this Court's review of the relative distance of Plaintiff's witnesses from each courthouse indicates that the average difference in distance is about 60 miles. (Resp. ¶ 67.) The greater distance from the Middle District Courthouse for some witnesses is insufficient on its own to demand keeping the case in the Eastern District. Moreover, Plaintiff has not asserted any reason that these witnesses will be unavailable for a potential trial in the Middle District. *Jumara*, 55 F.3d at 879 ("The private interests have included . . . the convenience of the witnesses – *but only to the extent that the witnesses may actually be unavailable for trial in one of the fora*.") (emphasis added). Third, the relative administrative difficulty in the two districts favors transfer to the Middle District because of the relatively congested docket in the Eastern District of Pennsylvania which has received a higher number of filings per judge in 2014 and 2015. ADMIN. OFFICE OF THE U.S. COURTS, 2015 JUDICIAL BUSINESS TABLES. Fourth, the local interest in deciding local controversies at home further weighs in favor of transfer to the Middle District as this is where the operative facts occurred, and thus that district has more interest in the facts and outcome of this case. Fifth, the public policies of the fora is a neutral factor as there is no difference between the two districts on this front. Sixth, the familiarity of the judge with applicable state law in this diversity case is another neutral factor as judges in either district will be adequately familiar with applicable Pennsylvania tort law. In summary, all of the public interests either weigh in favor of transfer or are neutral; the majority of the private interests weigh in favor of transferring this case. Therefore, Defendant has met its burden and the Court will grant the motion to transfer venue to the Middle District of Pennsylvania under 28 U.S.C. §1404(a).

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is DENIED and Defendant's Motion to Transfer is GRANTED. Pursuant to 28 U.S.C. §1404, this matter will be transferred to the Middle District of Pennsylvania.

BY THE COURT:

/s/ C. Darnell Jones, II
C. DARNELL JONES, II      J.